# Appendix A
*State of Idaho v. Warner*
(Idaho Case Nos. CR-98-00014 and CR-98-00015)


ORIGINAL

**IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF FREMONT**



STATE OF IDAHO,

    Plaintiff/Respondent,

vs.

Shane Warner and Wayde Warner,

    Defendant/Appellant.

Case No. CR-98-00014 and CR-98-00015

**DECISION ON APPEAL**

## Facts and Procedural Background

On December 20, 1997, Officer Don Jenkins of the Idaho Department of Fish and Game approached Appellants in Unit 60A of Fremont County. Appellants told Officer Jenkins they were hunting pursuant to their tribal hunting rights as members of the Northwestern Band of the Shoshones and they had shot at a bull elk that day. According to state hunting regulations, elk season was closed at this time. Because the State of Idaho does not recognize tribal hunting rights claimed by the Northwestern Band, Officer Jenkins cited Appellants for hunting big game out of season, a misdemeanor in violation of Idaho Code §36-1101. During the trial held on November 15, 1999, the Appellants admitted to hunting elk outside of the hunting season established by the state. The Appellants asserted the defense that they have hunting rights guaranteed by the Fort Bridger Treaty of 1868. The magistrate court found that the Northwestern Band did not have valid tribal hunting rights because the tribe had failed to maintain political cohesion with the Shoshone tribe, in which the treaty hunting

Decision on Appeal - Page 1

rights were vested. The magistrate then proceeded to find the Appellants guilty of the charged violation.

Appellants have appealed to this court the magistrate's decision. The State of Idaho as the respondent and the Shoshone-Bannock tribe as an amicus both oppose the Northwestern Band's claim that its members have hunting rights under the Ft. Bridger Treaty of 1868. Both the State of Idaho and the Shoshone-Bannock tribe argue that since the Northwestern Band has not maintained political cohesion with the signatories of the Ft. Bridger Treaty of 1868, that any hunting rights the Northwestern Band might have had under that treaty have been lost and foregone. The State of Idaho also argues that the admission of Idaho into the Union eliminated all hunting rights granted under the Ft. Bridger Treaty of 1868. The State of Idaho bases this claim on the "equal footing doctrine" and the United States Supreme Court Case of Ward v. Race Horse, 163 U.S. 504, 16 S. Ct. 1076 (1896).

### Issues on Appeal

1) Did the Fort Bridger Treaty of 1868 extinguish the Northwestern Band's aboriginal title, even though they did not sign the treaty?

2) Has the Northwestern Band failed to maintain political cohesion with the tribes who signed the treaty and thus lost the hunting rights granted by the treaty?

### Standard of Review

Since this issue is one of law, the Court exercises free review of the trial court's decision. Savage Lateral Ditch Water Users Ass'n. v. Pulley, 125 Idaho 237, 242, 869

Decision on Appeal - Page 2



P.2d 554, 559 (1993). The relative rights of present-day Indians and the various states can be determined by construction of a treaty, much the same as a contract is construed when dispute or ambiguity arises. State v. Coffee, 97 Idaho 905, 909-910, 556 P.2d 1185 (1976). The interpretation of the Fort Bridger Treaty is a federal question and the final arbiter of its meaning is the United States Supreme Court. State v. Cutler, 109 Idaho 448, 451, 708 P.2d 853, 856 (1985).

Courts have uniformly held that treaties, statutes and executive orders must be liberally construed in favor of establishing Indian rights. Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 767 (1985); Parravano v. Babbitt, 70 F.3d 539, 544 (9th Cir.1995), *cert. denied*, 518 U.S. 1016 (1996). Any ambiguities in construction must be resolved in favor of the Indians. Parravano, 70 F.3d at 544. These rules of construction "are rooted in the unique trust relationship between the United States and the Indians." Oneida County v. Oneida Indian Nation, 470 U.S. 226, 247 (1985).

The rules of construction, however, are of no help to the Appellants who are trying to establish hunting rights for the Northwestern Band because of the countervailing interests of the Shoshone-Bannock. *See* Confederated Tribes of Chehalis Reservation v. Washington, 96 F.3d 334, 340 (9th Cir.1996). The government owes the same trust duty to all tribes, including the Shoshone-Bannock. Id. This court cannot apply the canons of construction for the benefit of the Northwestern Band if such application would adversely affect Shoshone-Bannock interests. Id. In this case, the Shoshone-Bannock assert that the Northwestern Band

Decision on Appeal - Page 3



does not possess hunting rights under the Fort Bridger Treaty of 1868 and that any decision granting hunting rights to the Northwestern Band would cause substantial harm to the Shoshone-Bannock. *Motion for Limited Intervention of the Shoshone-Bannock Tribes*, pp.1-2, filed December 8, 1998.

### Ft. Bridger Treaty of 1868

Article 4: The Indians herein named agree, when the agency house and other buildings shall be constructed on their reservations named, **they will make said reservations their permanent home, and they will make no permanent settlement elsewhere**; but they shall have the right to hunt on the unoccupied lands of the United States so long as game may be found thereon, and so long as peace subsists among the whites and Indians on the borders of the hunting districts.

*Treaty With the Eastern Band Shoshoni and Bannock, 1868,* 15 Stat. 673, 674-675.

### DISCUSSION

**The Northwestern Band's Indian title/aboriginal right to hunt and fish was extinguished by the Ft. Bridger Treaty of 1868.**

The concept of aboriginal title is well established. State v. Coffee, 97 Idaho 905, 908, 556 P.2d 1185 (1976). In State v. Coffee, the Idaho Supreme Court made the following observation:

> '(T)he right of sovereignty over discovered land was always subject to the right of use and occupancy and enjoyment of the land by Indians living on the land. This right of use and occupancy by Indians came to be known as 'Indian title.' It is sometimes called 'original title' or 'aboriginal title" [citations ommitted]. Aboriginal title was founded on the notion that Indian occupancy and use of the land prehistorically predated the present sovereign. Justice demanded that until some more compelling exigence was recognized, the Indian should be allowed to continue his way of life on his traditional tribal lands. Thus, the aboriginal title was more

Decision on Appeal - Page 4



than just a right to remain camped on the land. It was a right to
continue, at least temporarily, a way of life. To the extent that
hunting or fishing was an integral part of the Indian's way of life
prior to the coming of the white man, it became a part of the way of
life allowed to continue after establishment of the sovereign. Thus,
hunting and fishing rights are part and parcel with aboriginal title.
In Pioneer Packing Co. v. Winslow, 159 Wash. 655, 294 P. 557
(1930), the court held that Indians own reservation fish 'by the
same title and in the same right as they owned them prior to the
time of the making of the treaty.' Further, treaties provide for
retention by the Indians of hunting and fishing rights, both on and
off the reservation, indicating that hunting and fishing rights are a
part of the aboriginal title which may be ceded by treaty or
reserved by the Indians. . . . We hold that, where established by
historical use, aboriginal title includes the right to hunt and fish and
**where those rights have not been passed to the United States,
by treaty or otherwise**, the rights continue to adhere to the current
members of the tribe which held them aboriginally. The right may
be regulated by the State, but only if a need for such conservation
is shown by the State. State v. Tinno, 94 Idaho 759, 497 P.2d 1386
(1972).

Id.

The Ft. Bridger Treaty of 1868 eliminated each band of Shoshone's (including the Northwestern Band's) Indian/aboriginal title to their homelands. Shoshone Tribe of Indians of the Wind River Reservation, Wyoming, et al., v. U.S., 11 Ind. Cl. Comm. 387, 415 (1962). The Indian Claims Commission held that Chief Washakie was the leader of all the Shoshone groups, including the Northwestern Band[1], and that he signed away

---

[1] As previously discussed a number of bands of Shoshone were reported by various officials to be under the control of Chief Washakie of the Wyoming Shoshone. Some of the bands so mentioned never were under his control such as the Goshute and part of the Western Shoshone. Others such as Pocatello's band [Northwestern Band], said not to be under his control in certain reports, actually were part of his tribe who at times acted independently against white settlers and immigrants contrary to the policy of friendship to the whites that Washakie favored for his people. According to Nick Wilson, a young boy who had lived in the camp of Washakie for a period of time, Pocatello had tried, but failed, to wrest control of the tribe from Washakie but the tribe had rejected his overtures. So there did exist among the Shoshone people a collection of bands under the control of the chief which may be said to have constituted a tribe in fact . . . The Shoshone Tribe included the bands treated with in 1863 by Governor Doty and designated in the said treaties of friendship as the 'Eastern Bands,' the 'Northwestern Bands' and the 'Mixed Bands of Bannocks and Shoshones.' Shoshone Tribe of Indians of the Wind River Reservation, Wyoming, et al., v. U.S., 11 Ind.

Decision on Appeal - Page 5

all Shoshone land in the Fort Bridger Treaty of 1868, including the land of the Northwestern Band. 11 Ind. Cl. Comm. at 437-438. *See also* Northwestern Bands of Shoshone Indians v. U.S., 324 U.S. 335 (U.S. Ct. Cl., Mar 12, 1945) (suit by the Northwestern band against the United States to recover damages for the taking of land held by the Indians by aboriginal/Indian title). Therefore there can be no claim or aboriginal title or of aboriginal hunting rights by the Northwestern Band.

**The Northwestern Band has failed to maintain political cohesion with the tribes who signed the Ft. Bridger Treaty of 1868 and thus lost the hunting rights granted by the treaty.**

Rights under a treaty vest with the tribe at the time of the signing of the treaty, but Indians later asserting treaty rights must establish that their group[band] has preserved its tribal status and they must show that they have maintained political cohesion with the tribal entities created by the treaties and receiving fishing rights. United States v. Oregon, 29 F.3d 481, 484, 486 (9th Cir. 1994), *amended by* 43 F.3d 1284 (9th Cir. 1994). A showing of common ancestry is not sufficient and actual merger or combination of tribal or political structure is required. Id, at 484. By deliberately separating from the Eastern Shoshones on the Wind River Reservation and the Shoshone-Bannocks on the Ft. Hall Reservation, the Northwestern Band failed to maintain political cohesion with the tribal entities in which the Ft. Bridger Treaty of 1868 rights were vested.

In the United States v. Oregon case cited above, the 9th Circuit made the following findings and rulings as to the fishing rights of the Chief Joseph Band of Nez

---

Cl. Comm. at 437-438.

Decision on Appeal - Page 6



Perce Indians:

> As the Nez Perce Tribe correctly argues, the fishing rights belong to the tribal entity as a whole, not to its component bands individually. ... the Chief Joseph Band withdrew from the Nez Perce Tribe ... when it refused to sign the 1863 treaty or move to the Nez Perce Reservation. **Because the Chief Joseph Band has not maintained political cohesion with the Nez Perce Tribe, the Chief Joseph band cannot exercise the treaty rights which were granted to the Nez Perce Tribe.** Thus, regardless of whether the Chief Joseph Band moved to Colville as a tribe and has maintained its own defining tribal characteristics, we agree with the result reached by the district court that the descendants of the Chief Joseph Band currently living on Colville cannot assert treaty fishing rights.

Id, at 487.

In this case the Appellants own expert, Mr. Lewelling, testified that the Northwestern Band is a separate tribal entity and not part of the Shoshone-Bannock tribe at Ft. Hall. Tr. pg. 66, ln. 20-21. Mr. Lewelling also has stated that the Northwestern Band maintains their own distinct cultural and political identity and do not consider themselves to be part of the reservation based Shoshone-Bannock at Ft. Hall. Respondent's Ex. 4, p.3. The Appellants state in their Appellant's Brief on pg. 11, "the State argues the Northwestern Tribe has separated its self from the Sho Ban tribe since the Fort Bridger Treaty was signed. You cannot separate something that was never together in the first place." Whether the Northwestern Band was part of the larger Shoshoni nation is apparently in dispute. See footnote 1. Irregardless, even if the Northwestern Band was never part of the Shoshone tribe, it is the Shoshone tribe and not the Northwestern Band in which the Fort Bridger Treaty of 1868 hunting rights are vested. So in order to take advantage of these treaty hunting rights, the Appellants must show that the Northwestern Band has maintained political cohesion with the

---

Decision on Appeal - Page 7



Shoshone tribe. The Appellants have not met this burden.

The Appellants seem to be arguing that the Northwestern Band has maintained its own political cohesion and this is all that U.S. v. Oregon requires. This is only part of the test set forth in U.S. v. Oregon. U.S v. Oregon also requires that the Northwestern Band maintain political cohesion with the tribal entity in which the treaty hunting rights are vested, namely the Shoshone-Bannocks at Ft. Hall or the Eastern Shoshones at Wind River. There can be no doubt that the Northwestern Band is no longer a part of the Shoshone-Bannock tribe or the Eastern Shoshone tribe as Appellants have themselves admitted as much.

The Northwestern Band has also violated the strict terms of the Ft. Bridger Treaty of 1868. The treaty states that in order to receive the hunting rights granted therein, the Indians "will make said reservations their **permanent** home, and they will make no permanent settlement elsewhere". The Northwestern Band has violated this condition. They have made permanent settlements elsewhere and have not made the reservation their "permanent" home. The Northwestern Band's tribal headquarters is not on the reservation but are located in Brigham City, Utah and Blackfoot, Idaho. State's Ex. 3, p.1. Neither of the Appellants live on the reservation, rather they both live in Pocatello. *Misdemeanor Citations #25203 and #25202.*

The hunting rights under the Ft. Bridger Treaty of 1868 were granted to the Eastern Shoshones and the Shoshone-Bannocks. In order for the Northwestern Band to have these same hunting rights, it would have had to move to the reservation and became part of either what is now generally known as the Eastern Shoshone tribe or

Decision on Appeal - Page 8

the Shoshone-Bannock tribe for it is these two tribes in which the hunting rights are vested. By distancing themselves from these tribal entities, the Northwestern Band has no claim to those tribe's vested hunting rights.

**Equal Footing and <u>Ward v. Race Horse</u>.**

The State argues that the hunting rights granted to the Shoshone tribe were abrogated when Idaho was admitted to the Union. This is commonly referred to as the "equal footing" doctrine and has its basis in the constitutional principle that all States are admitted to the Union with the same attributes of sovereignty (i.e., on equal footing) as the original 13 States. *See* <u>Coyle v. Smith</u>, 221 U.S. 559 (1911). Having decided above that Appellants do not possess valid treaty hunting rights, this court finds it unnecessary to rule on whether the Shoshone-Bannock tribe still has hunting rights under the Ft. Bridger Treaty of 1868. This court also finds it unnecessary to rule on whether <u>Ward v. Race Horse</u> has established that there are no remaining hunting rights under the Fort Bridger Treaty of 1868. This court will note that it does appear that the Organic Act creating the Territory of Idaho and the Idaho Constitution are different than that of Wyoming and thus might produce a different result than the decision in <u>Ward v. Race Horse</u>. *See* <u>State v. Arthur</u>, 74 Idaho 251, 256-257, 261 P.2d 135 (1953). This is an area of great confusion and conflicting precedent and this court finds it unnecessary to enter a ruling on this issue at this time.

## CONCLUSION

Appellants cannot show that the Northwestern Band has maintained political cohesion with the Shoshone-Bannocks or the Eastern Shoshones and therefore cannot

take advantage of hunting rights granted to these tribes by the Fort Bridger Treaty of 1868. The Northwestern Bands aboriginal rights or "Indian title" to their homelands was extinguished by Washakie in the Fort Bridger Treaty of 1868. The Northwestern Band has since failed to: (1) move to the established reservations; and (2) make these reservations their permanent home. The Northwestern Band has failed to maintain political cohesion with the Shoshone-Bannocks and Eastern Shoshones and thus cannot exercise the treaty hunting rights which are vested in these tribes. Therefore, the decision of the magistrate is hereby AFFIRMED.

Dated this __31__ day of October, 2000.

Brent J. Moss, District Judge

Decision on Appeal - Page 10

